In re: **LUNA PIER LAND DEVELOPMENT, LLC Debtor.**

**Nabih Qassis & Juliet Qassis, Plaintiffs,**

v.

**Republic Bank, Defendant.**

**Bankruptcy No. 01–46278.
Adversary No. 01–4876.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

May 23, 2005.

*Opinion Regarding Priority of Mortgages*

STEVEN RHODES, Chief Bankruptcy Judge.

This adversary proceeding involves a dispute over the priority of liens as to real property in Erie, Michigan. On March 30, 2001, an involuntary Chapter 7 bankruptcy petition was filed against the debtor, Luna Pier Land Development, LLC. When the petition was filed, Luna Pier owned the real property subject to several lien interests.

On October 9, 2001, Plaintiffs, Nabih and Juliet Qassis, filed this adversary proceeding to establish the priority of the lien interests. On January 28, 2003, the Court issued an order granting the plaintiffs' motion for summary judgment and denying Republic Bank's motion for summary judgment. The Court held that the plaintiffs' mortgage was entitled to priority over Republic Bank's mortgage. Republic Bank appealed.

On February 12, 2004, the District Court entered an order reversing in part and affirming in part. Specifically, the District Court instructed this Court to address three of Republic Bank's affirmative defenses to the complaint: (1) the priority of Republic Bank's mortgage as a purchase money mortgage, (2) estoppel, and (3) laches.

The Court conducted a trial on March 2, 2005. The Court now concludes that both

the plaintiffs' mortgage and Republic Bank's mortgage are purchase money mortgages and that because the plaintiffs' purchase money mortgage was first in time, it has priority. Additionally, the Court concludes that the affirmative defenses of equitable estoppel and laches are not applicable.

## I.

The Restatement of Property defines a "purchase money mortgage" as a "mortgage given to a vendor or lender when the proceeds of the loan are used to either acquire title to the real estate or construct improvements on the real estate, if the construction was part of the same transaction in which the title is acquired." RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 7.2 (1997). The Michigan Supreme Court defines a purchase money mortgage as " '[a] mortgage or security device taken back to secure the performance of an obligation incurred in the purchase of the property.' " *Graves v. Am. Acceptance Mortgage Corp.*, 469 Mich. 608, 677 N.W.2d 829 (2004) (quoting Black's Law Dictionary (6th ed.)) [1].

Republic Bank acknowledged these definitions in its post-trial brief and asserts that its full $2.2 million mortgage is a purchase money mortgage.

The plaintiffs do not dispute that Republic Bank holds a purchase money mortgage. Rather, they contend that their own mortgage is also a purchase money mortgage, and that as such it has priority.

The Court concludes that both mortgages at issue are purchase money mortgages. In both cases, the mortgagor gave the mortgage to secure repayment of the funds used to purchase the real property. Hassan Choucair gave the plaintiffs a mortgage to secure his note for $150,000 when he purchased the property from them in March 1997. Thus, the plaintiffs' mortgage is a purchase money mortgage. When Hassan Choucair sold the property to Luna Pier in December of 1998, Luna Pier borrowed the money from Republic Bank and gave Republic Bank a mortgage. Accordingly, Republic Bank's mortgage is also a purchase money mortgage.

Because both mortgages are purchase money mortgages, the question becomes the priority of the competing purchase money mortgages. Republic Bank argues that because of the nature of a purchase money mortgage, a later purchase money mortgage takes precedence over an earlier purchase money mortgage. Republic Bank cites *Troyer v. Mundy*, 60 F.2d 818 (8th Cir.1932), to support its argument that "[b]y definition, a purchase money mortgage takes priority over any and all prior encumbrances, even that of a prior purchase money mortgage." (Republic Bank's Post–Trial Br. at 6.)

> A 'purchase money mortgage' is what the term implies, and is predicated on the theory that upon the simultaneous execution of the deed and mortgage the title to the land does not for a single moment rest in that purchaser, but merely passes through his hands and,

**1.** Justice Weaver, concurring in *Graves,* wrote separately to try "to make clear that, at this time, the purchase money mortgage doctrine remains a part of Michigan jurisprudence." *Graves,* 677 N.W.2d at 836 (footnote omitted). However, because none of the other justices joined in that concurrence, there may be a question regarding the viability of the purchase money mortgage doctrine in Michigan.

The Court concludes that it is unnecessary to decide that question in this case because either way, the plaintiffs prevail. This opinion assumes that the doctrine is still viable and demonstrates why the plaintiffs' mortgage has a priority under the doctrine. On the other hand, it is axiomatic that if the doctrine does not survive, the plaintiffs would prevail on that ground alone.

without stopping, rests in the mortgagee. It follows, therefore, [that] no lien of any character can attach to the title of the mortgage.

*Troyer,* 60 F.2d at 821 (citation omitted).

However, neither the parties nor the Court could find any cases actually holding that a later purchase money mortgage would have priority over an earlier purchase money mortgage.

■ However, based on the nature of purchase money mortgages, the Court holds that the first purchase money mortgage has priority over the later purchase money mortgage. Republic Bank's proceeds facilitated Luna Pier's purchase and therefore that purchase money mortgage should be given priority over liens and judgments arising *after it.* However, Republic Bank's purchase money mortgage does not have priority over the plaintiffs' previous purchase money mortgage. That mortgage, as the first purchase money mortgage in the chain of title, has priority over all liens and encumbrances *after it,* including the Republic Bank mortgage. Otherwise, the priority of the plaintiffs' purchase money mortgage would be meaningless.

## II.

Republic Bank further asserts that the Court should give its lien priority over the plaintiffs' mortgage due to the equitable doctrines of estoppel and laches.

## A.

■ "Estoppel is an equitable doctrine which a court may invoke to avoid injustice in particular cases." *Michigan Exp., Inc. v. United States,* 374 F.3d 424, 426 (6th Cir.2004) (citing *Fisher v. Peters,* 249 F.3d 433, 444 (6th Cir.2001)).

■ The elements of equitable estoppel are:

1) conduct or language amounting to a representation of material facts; 2) the party to be estopped must be aware of the true facts; 3) *the party to be estopped must intend that the representation be acted on* or act such that the party asserting the estoppel has a right to believe it so intended; 4) the party asserting the estoppel must be unaware of the true facts; and 5) the party asserting the estoppel must detrimentally and justifiably rely on the representation.

*King v. Henderson,* 2000 WL 1478360, *5 (6th Cir. Sept.27, 2000) (emphasis added) (quoting *Apponi v. Sunshine Biscuits, Inc.,* 809 F.2d 1210, 1217 (6th Cir.1987)).

In the present case, Republic Bank asserts that the plaintiffs' conduct of failing to record their mortgage amounted to a representation that they did not have a mortgage on the property. Further, Republic Bank asserts that it relied upon this representation to its detriment.

■ The Court concludes that the doctrine of equitable estoppel is not applicable in this case. It is arguable whether the plaintiffs' failure to record their mortgage constituted a representation that they did not have a mortgage on the property, and whether Republic Bank relied upon such a representation. However, the evidence clearly establishes that the plaintiffs were not aware that their mortgage had not been recorded when Republic Bank (through its title company) conducted its record search. Therefore, the plaintiffs *did not intend* that Republic Bank, or anyone for that matter, act upon this representation. Accordingly, the required elements for equitable estoppel are not present in this case.

## B.

■ The Michigan courts define the doctrine of laches as follows:

The doctrine of laches is a tool of equity that may remedy "the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert." It is applicable in cases in which there is an unexcused or unexplained delay in commencing an action, the corresponding change of material condition that results in prejudice to a party.

*Public Health Dept. v. Rivergate Manor,* 452 Mich. 495, 550 N.W.2d 515 (1996) (quoting *Lenawee Co. v. Nutten,* 234 Mich. 391, 208 N.W. 613 (1926)).

▆ Republic Bank asserts that the plaintiffs' almost two year delay in recording their mortgage caused prejudice to Republic Bank because Republic Bank would not have loaned the money to Luna Pier for the purchase of the property if it had known of the plaintiffs' mortgage. The plaintiffs explained that unbeknownst to them, their attorney neglected to record their mortgage. However, the mortgage was recorded the same day the error was discovered.

The equitable doctrine of laches may be invoked where there has been "an unreasonable delay by one party which prejudiced the other party." *Wells v. United States Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1250 (6th Cir.1991). "The defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.' " *Kansas v. Colorado,* 514 U.S. 673, 687, 115 S.Ct. 1733, 131 L.Ed.2d 759 (1995) (quoting *Costello v. United States,* 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961)). Dismissal of a claim on the ground of laches requires that there be: (1) an unreasonable and unexcused delay in bringing the claim; and (2) material prejudice as a result of the delay. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1028 (Fed.Cir.1992) (en banc).

*Galbreath v. Birch,* 1998 WL 552752, *1 (6th Cir. Aug.11, 1998).

▆ The doctrine of laches is most commonly addressed in the context of a failure to file a claim or raise a defense. Without reaching the issue of whether laches can be used as an affirmative defense when the recording statute otherwise controls, the Court finds that Republic Bank did not establish that the plaintiffs lacked diligence in recording their mortgage. Although a two year delay is significant, the plaintiffs established that they actively defended their interest by filing quiet title actions and contacting an attorney when they saw the destruction of the party store in which they believed they had a secured interest. It was then that they discovered the failure of their prior attorney to record the mortgage in question. Upon learning of his failure to record the mortgage, the plaintiffs immediately caused the mortgage to be recorded.

▆ Additionally, both laches and estoppel are equitable doctrines. Accordingly, to obtain the benefit of them, Republic Bank must have "clean hands." As Republic Bank states in its pre-trial brief, "[W]hen faced with a choice, as here, between two innocent parties, courts will rule in favor of the party other than the one who made the fraud possible." *Karibian v. Paletta,* 122 Mich.App. 353, 332 N.W.2d 484 (1983).

▆ In the present case, Republic Bank's own delay in recording its mortgage prevents the application of these equitable doctrines to its benefit. If Republic Bank had immediately recorded its own mortgage, it would not be in the position it now finds itself. Its own delay is as much to blame as the plaintiffs' delay in filing their mortgage. In fact, the Court finds

Republic Bank's delay more egregious than the plaintiffs' delay even though the plaintiffs' delay was longer. The testimony established that Republic Bank's 51 day delay in recording its mortgage was due to the fact that it had closed the loan without having all of the necessary supporting documentation to record the mortgage. Specifically, Republic Bank did not have an original power of attorney which authorized an attorney to sign the loan documents on behalf of his client.

### III.

In its brief Republic Bank also argues that the recording statute does not protect the plaintiffs due to their attorney's judicial admission on appeal that the plaintiffs knew of Republic Bank's mortgage before they recorded their own.

The Court previously determined that the race-notice statute was not specifically applicable because the plaintiffs' mortgage was both first in time and first to be recorded. The District Court affirmed that holding on appeal. Accordingly, pursuant to the law of the case doctrine, this Court will not revisit its prior holding that the plaintiffs' mortgage is entitled to priority under the statute even if the plaintiffs' did know of Republic Banks' mortgage when they filed their mortgage. *See In re Bli Farms,* 312 B.R. 606, 619 (E.D.Mich.2004).

### IV.

In conclusion, the Court holds that the plaintiffs' mortgage lien has priority over the Republic Bank mortgage lien.

The Court will enter an appropriate order.